IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RICHARD F. YARBOROUGH JR.                                                                PLAINTIFF

v.                                                                          CIVIL ACTION NO: 3:12cv6-DPJ-FKB

THE PRUDENTIAL INSURANCE COMPANY                                          DEFENDANT
OF AMERICA

ORDER

This ERISA case is before the Court on Plaintiff's Motion and Amended Motion for Partial Judgment as a Matter of Law [15, 17], as well as Plaintiff's Motion to Strike Prudential's Filing of a Protected Settlement Communication [23].  In general, Plaintiff controverts the denial of long-term disability benefits under an ERISA plan.  And although his civil action raises numerous challenges to that decision, the present motions for judgment focus on only one of those issues—whether the administrator applied the correct definition of "disabled."  Having considered the parties' memoranda and submissions, the Court concludes that all three motions should be denied.

I.      Facts and Procedural History

Plaintiff Richard F. Yarborough Jr., joined the Baker Donelson law firm as a litigation shareholder in 2007 and became enrolled in Baker Donelson's Group Insurance Contract ("the Plan") provided by Defendant The Prudential Insurance Company of America.  In March 2009, Yarborough suffered complications following scheduled knee surgery, and he claims the resulting knee problems rendered him unable to continue his employment as a senior litigator.

On July 31, 2009, Yarborough filed a claim for long-term disability benefits under the Plan's LTD policy ("the Policy").  Prudential, as claims administrator, initially denied the claim

in September 2009, but Prudential reconsidered its denial in April 2010 and approved the claim retroactive to September 2009.  Prudential then paid Yarborough LTD benefits through August 2010, when it terminated Yarborough's benefits based on its conclusion that he did not meet the Policy's definition of "disabled."  Specifically, Prudential determined that Yarborough did not have an impairment "that would prevent him from performing the material and substantial duties of his regular occupation."  Pl.'s Mot. [17] Ex. 2 (filed under seal at [20-1]), Nov. 10, 2011, Denial Letter, at Yarborough003314.  Yarborough appealed the termination of benefits, and Prudential upheld its decision on November 10, 2011.

Yarborough filed this lawsuit on January 5, 2012, seeking, among other things, past benefits he alleges are due under the Policy and a declaratory judgment as to his entitlement to future benefits.  Yarborough moved for partial judgment as a matter of law on February 17, 2012, arguing that a May 1, 2010, change in the terms of the Policy applied to his claim for benefits and required Prudential to assess whether he met the revised definition of "disabled."  Yarborough also moved to strike from Prudential's response to his motion communications he alleges are confidential settlement communications.  The Court has personal and subject-matter jurisdiction and is prepared to rule.

II.     Standard

At the outset, the Court must determine whether Yarborough's Motion and Amended Motion for Partial Judgment as a Matter of Law are properly characterized as motions under Rule 12(c) or Rule 56.  Yarborough never specifies, but he attached 35 exhibits to the amended motion.  Prudential submitted an additional 14 exhibits in response, and Prudential assumed in

its response that Yarborough's motions seek partial summary judgment.  Def.'s Resp. [22] at 5.  The Court therefore construes the motions as filed under Rule 56.[1]

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine

---

[1]That Prudential so construed Yarborough's filings indicates that it had "a reasonable opportunity to present all the material that is pertinent to the motion" as required for conversion of a Rule 12 motion into a summary judgment motion.  Fed. R. Civ. P. 12(d).

issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

III.   Analysis

    A.   Motion and Amended Motion for Partial Judgment as a Matter of Law

Yarborough seeks a ruling on a threshold legal issue:  whether a May 1, 2010, amendment to the Policy, which contains a revised definition of "disabled," applies to his claim for LTD benefits.  Yarborough asserts that it does and that Prudential abused its discretion in relying on the more restrictive definition of "disabled" contained in an earlier version of the Policy to justify its denial of his claim.

Where an ERISA plan gives the administrator discretionary authority to interpret the plan documents and determine eligibility for benefits, courts apply an abuse of discretion standard to the administrator's interpretation.[2]  *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 269 (5th Cir. 2004).  The Court's review of the administrator's interpretation begins with the Plan documents.  *See Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998) ("Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language.") (citation omitted).  This review occurs under a two-part test.  "If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends."  *McCall v. Burlington N./Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).  If, on the other hand, the Court "concludes that the administrator has not given the plan the legally

---

[2] Yarborough assumes for purposes of his motion that Prudential had discretion to interpret the Plan documents and make eligibility determinations.  Pl.'s Mem. [16] at 10.

correct interpretation, the [C]ourt must then determine whether the administrator's interpretation constitutes an abuse of discretion." *Id.*

> In answering the first question, i.e., whether the administrator's interpretation of the plan was legally correct, a court must consider: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.

*Gosselink v. Am. Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001). Of these three factors, the second factor predominates. *Id*. at 727. "[I]f an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant regulations." *Id.*

       1.     The Plan Language

In this case, the Plan is memorialized in the Group Insurance Contract, effective January 1, 2003, which incorporates by reference a number of Group Insurance Certificates, including the two versions of the LTD Policy at issue. The LTD Policy in effect at the time Yarborough injured his knee became effective and a part of the Group Contract on January 1, 2008. Def.'s Resp. [22] Ex. 4, Jan. 1, 2008 LTD Policy, at D009369. It contains the definition of "disability" Prudential applied in its decisions on Yarborough's claim, requiring both an inability "to perform the ***material and substantial duties*** of your ***regular occupation***" <u>and</u> "a 20% or more loss in your ***indexed monthly earnings***" to establish disability. *Id.* at D009378. On May 1, 2010, after Prudential had begun to pay Yarborough benefits under the Policy and before it made its final decision to cease those payments, a new version of the LTD Policy came into effect, replacing the previous version under the Group Contract. Def.'s Resp. [22] Ex. 6, May 1, 2010, LTD

Policy, at D009496.  The new version defined disability more broadly, requiring either an inability "to perform the **material and substantial duties** of your **regular occupation**" or "a 20% or more loss in your **monthly earnings**" to establish disability.  *Id.* at D009505.[3]

      Whether the administrator correctly applied the more restrictive original definition is the sole issue raised in Yarborough's motions, and the Plan documents speak to the effective date of amendments.  The Group Contract states that "it can be amended at any time . . . .  But an amendment will not affect a claim incurred before the date of change."  Def.'s Resp. [22] Ex. 3, Group Contract, at D009332.  As stated, the Group Contract "consists of:  (1) the Group Insurance Certificate(s) listed in the Schedule of Plans" and "(2) all modifications and endorsements to such Group Insurance Certificates."  *Id*.  Thus, amendments to Group Insurance Certificates—which is where the 2010 amendment to the "disability" definition is found—"will not affect a claim incurred before the date of change."  *Id*.  Yarborough incurred and submitted his claim before the 2010 amendment, and the administrator was correct to apply the earlier definition.  Yarborough never responded to this portion of Prudential's response.

      Prudential alternatively argues that the 2010 amendment includes the following language that precludes its application to Yarborough's claim:

---

[3]Prudential apparently produced the disputed 2010 amendment for the first time in its response to the present motion.  It then argued that Yarborough is precluded from relying upon its terms because it was not part of the administrative record.  Yarborough rejects this argument as "mere frippery," Pl.'s Reply [24] at 8, suggesting that Prudential is charged with knowledge of its own plan documents.  Elsewhere in his Reply, Yarborough argues that this Court is free to consider evidence "beyond the record that could be considered as relating to 'interpreting the plan' or 'how the administrator interpreted the plan.'"  *Id*. at 2 (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (holding that "when assessing factual questions, the district court is constrained to the evidence before the plan administrator.")).  The Court will decide the issue in light of Yarborough's position that it is ripe for review.

**When Will Changes to Your Coverage Take Effect?**

> Once your coverage begins, any increased or additional coverage will take effect on the latest of:
>
> 1. the effective date of the change, if you are:
>
> •     in active employment;
>
> •     on a temporary layoff;
>
> •     on leave of absence; or
>
> •     working *reduced hours*, for reasons other than disability.
>
> 2. the date you return to active employment, if you are not in active employment due to injury or sickness.

Def.'s Resp. [27] Ex. 6, May 1, 2010, LTD Policy at D009502. According to Prudential, the expanded definition of "disabled" represents "increased or additional coverage," and because Yarborough was "not in active employment due to injury or sickness," the amendment would take effect only upon his return to active employment.[4]

This argument begs the question whether Prudential increased or added "coverage" when it adopted the more generous definition of "disabled." According to Yarborough, it did not because "coverage" means the amount payable under the Policy. Thus, the provisions specifying

---

[4]Although Prudential does not rely upon it, the 2008 Policy included similar language:

> Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment. . . .

Def.'s Resp. [22] Ex. 4, Jan. 1, 2008, LTD Policy at D009375.

when changes to "coverage" take effect apply only to changes in the limits and have no impact on any other "'terms' of the Plan." Pl.'s Rebuttal [24] at 5.  Because the limits never changed, Yarborough asserts that the May 2010 Policy contained no change to Yarborough's coverage. The Court disagrees with Yarborough's interpretation of the word "coverage."

Although the Policy never defines the word "coverage," it consistently uses the term in a manner that refers to an insured's entitlement to "benefits" rather than the Policy's monetary limits.  For example, the Group Contract explains that certificates will be provided to employees describing the "employee's coverage under the Group Contract" which includes "to whom Prudential pays benefits . . . [and] claim rights and requirements."  Def.'s Resp. [22] Ex. 3, Group Contract at D009332.  It also identifies the "covered class" as including "all employees included in the" listed Covered Classes.  *Id*. at D009335.  The incorporated certificates continue this use of the term "coverage" when they speak of "a line of coverage"; "persons covered under a coverage"; "a covered class"; employees "eligible for coverage"; when "coverage begins"; the time "you will be covered"; "the cost of your coverage"; "apply[ing] for coverage"; "cancel[ling] coverage"; whether "coverage" begins or continues during a temporary absence from work; and when coverage ends. Def.'s Resp. [22] Ex. 4, Jan. 1, 2008 Policy, at D009373–D009375.  In contrast, the Policy uses the terms "payment," "benefit," and "maximum benefit" to describe the monetary amounts payable to covered employees.  *Id.* at D009369, D009379.

Read in harmony with these provisions, "increased or additional coverage" relates to new risks undertaken by Prudential pursuant to a Policy amendment. *Id.* at D009375.  *See Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 687 (5th Cir. 2007) (noting distinction between "the concepts of liability limits and coverage limits").  *C.f.*, *Wells v. Gulf Ins. Co.*, 484

F.3d 313, 314 (5th Cir. 2007) (differentiating between an automobile "policy's *liability limits*—that is, the policy's monetary parameters" and "*coverage limits*—that is, vehicles and persons insured, conduct insured against, and the like"); *see also* The Oxford English Dictionary (2d ed. 1989) (defining "coverage" as "[t]he aggregate of risks covered by an insurance policy"); Couch on Insurance § 1:4 (consistently using "coverage" to mean covered risk or loss).  Thus, any change to Yarborough's entitlement to benefits resulting from a revision to the definition of "disability" would have been a change in coverage under the Policy.  Such a change would not affect Yarborough's claim under the Policy's plain terms.[5]

          2.        Whether Common Law Precludes the Plan Language

According to Yarborough, "'the controlling plan will be the plan that is in effect at the time a claim for benefits accrues.'"  Pl.'s Resp. [24] at 4 (citing *Singleton v. San Jacinto Methodist Hosp.,* No. Civ. A. H–02–1396, 2003 WL 22303420 at *2 (S.D. Tex. July 14, 2003) and other cases).  While that general statement appears in some opinions, the cases that explain the rule demonstrate that it has no application to Yarborough's claim.

In the cases Yarborough cited, and many others, employees were covered under ERISA plans when they incurred injury, but the plans were changed to the employees' detriment by the time the claims were denied.  In *McGann v. H & H Music Co.*, for example, the administrator essentially gutted the employee's benefits after the claim was incurred, leading the employee to argue that benefits vested and could not be reduced.  946 F.2d 401, 405 (5th Cir. 1991).  The Fifth Circuit disagreed, holding that "this is plainly not the law, and ERISA does not require such

---

[5]In any event, Yarborough never rebutted Prudential's argument that the Group Contract expressly stated that "an amendment will not affect a claim incurred before the date of change." Def.'s Resp. [22] Ex. 3, Group Contract, at D009332.

9

'vesting' of the right to a continued level of the same medical benefits once those are ever included in a welfare plan." *Id*. It follows that "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *see Hargrave v. Commonwealth Gen. Corp.'s Long Term Disability Plan*, 430 F. App'x 256, 261 (5th Cir. 2011) (concluding amendment to LTD policy that reduced future benefits applied to claim incurred prior to amendment). Thus, in the cases Yarborough cites, the courts allowed the employers or plan sponsors to reduce benefits based on plans that were adopted after an injury but before denial, provided, however, that the plans did not "expressly indicate[] that a right to benefits vest[ed] at an earlier date." *Singleton*, 2003 WL 22303420, at *2. These cases did not ignore the language of the ERISA plans.

Yarborough makes the converse argument, claiming benefit to a post-injury/pre-denial amendment that expanded coverage despite Plan language precluding him from that benefit. He cites no authority for this proposition, and if an employer or plan sponsor may "modify or discontinue" a welfare plan, it should also be able to dictate to whom plan changes will apply. *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993); *see Shane v. Albertson's Inc.*, 504 F.3d 1166, 1168–89 (9th Cir. 2007) (concluding that amended LTD plan did not cover employee whose injury pre-dated amendment where plan limited applicability of amendment to injuries occurring after date of amendment).

It is a "well-settled principle that Congress did not intend that ERISA circumscribe employers' control over the content of benefits plans they offered to their employees." *McGann*, 946 F.2d at 407. The Court therefore concludes that the applicability of the amendment in this

case is governed by the Plan language and not the final denial date. *See Threadgill*, 145 F.3d at 292 ("Eligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language.") (citation omitted).

      B.      Motion to Strike

Yarborough has moved to strike "protected settlement communications" Prudential included in its response to his motions. Specifically, Yarborough objects to the inclusion of two letters from his attorney to Prudential's counsel. Def.'s Resp. [22] Ex. 14, Feb. 8, 2012, Letters. Although the letters were redacted to remove reference to settlement negotiations, Yarborough claims that attaching them to Defendant's Response was designed "to weave together a web" of misdirection that unnecessarily invades the sanctity of settlement negotiations and creates a chilling effect. Pl.'s Mot. [23] ¶¶ 5–6.

The motion is denied. Yarborough cites no binding authority adopting the privilege he suggests, and no chilling effect is apparent because settlement communications are not sacrosanct. Federal Rule of Evidence 408 governs admissibility of "statements made in compromise negotiations" and prohibits using such evidence for some purposes while permitting it for others. Thus settlement communications can—under certain circumstances—reach a jury. Rule 408 also has application under Rule 56, because Rule 56(c)(2) requires non-moving parties to respond with evidence that can be presented in an admissible form. *See also Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) ("Material that is inadmissible will not be considered on a motion for summary judgment . . . .").

In this case, the two letters were marked "Confidential Settlement Communications," but Yarborough has not disputed Prudential's argument that it redacted all settlement

11

communications from the letters before docketing them.  *See King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 720 (5th Cir. 2011) (trial judge redacted inadmissible settlement communications from correspondence).  Yarborough likewise took no issue with Prudential's argument that the non-redacted statements were admissible under Rule 408, and instead argues that the exhibit was unnecessary to Defendant's response.  The Court likewise questions the documents' relevance to the issues presented in Yarborough's motions for partial judgment and did not base its ruling on those documents.  But it sees no basis for striking them from the record.

IV.    Conclusion

The Court has considered all of the parties' arguments.  Those not addressed would not change the result.  Plaintiff's Motion for Partial Judgment as a Matter of Law [15], Amended Motion for Partial Judgment as a Matter of Law [17], and Motion to Strike [23] are denied.

**SO ORDERED AND ADJUDGED** this the 1st day of August, 2012.

                     s/ *Daniel P. Jordan III*
                     UNITED STATES DISTRICT JUDGE